### In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

### In re WESTVACO BUILDING RENTAL DISPUTES.
### No. 70–347.

United States District Court,
E. D. Pennsylvania.
March 27, 1975.

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Penn Central Trans. Co.

Robert W. Sayre, Saul Ewing, Remick & Saul, Philadelphia, Pa., for Fisher-Park Lane Co.

## MEMORANDUM AND ORDER NO. 1824

FULLAM, District Judge.

In 1965, the Debtor leased to Fisher-Park Lane Company the land upon which the latter then erected a 42-story office building, known as the Westvaco Building, in the City of New York. Under the terms of the lease, the rent payable to the Debtor is computed by aggregating various factors including (1) a "percentage rent" equal to 50% of the amount by which the gross income in any one year exceeds $5,759,625; and (2) "additional rent" based on various fluctuating charges imposed upon the premises, including real estate taxes. The tenant makes the initial calculations of the rent due, subject to the right of the landlord to audit the books.

The Trustees of the Debtor, claiming that the tenant has failed to pay the proper amount under the lease, have petitioned this Court for an order compelling payment. Count I of the Trustees' petition charges underpayment of "percentage rent" for the years ending April 30, 1969 through April 30, 1971. Count II makes similar claims for the year ending April 30, 1972. Count III relates to certain sums alleged to be due as "additional rent" for the years ending April 30, 1971 through April 30, 1973.

## I. *Jurisdiction*

It is common ground that this Reorganization Court would not ordinarily have jurisdiction to adjudicate the claims asserted by the Trustees. But in September of 1970, the tenant filed a petition (Document No. 312) seeking the aid of this Court to protect the tenant's interests under the lease. And on December 28, 1970, I entered Order No. 107, which permits the tenant to pay real estate taxes directly to the City of New York, rather than to the Trustees; and which permitted the tenant to recover from the Debtor's estate, by withholding the payment of rent due under the lease, certain amounts of "additional rent" previously paid to the Debtor for real estate taxes, but retained by the Debtor.

The tenant's petition did not in any way limit its submission to the jurisdiction of this Court. Thus, if nothing else had occurred, it would seem clear that all disputes relating to "additional rent" as affected by real estate taxes, and, arguably, all disputes of any kind under the lease, would have been cognizable by this Court.

However, on June 5, 1972, the parties submitted, and this Court approved, a "stipulation consenting to jurisdiction" (Document No. 3663) which, by implication at least, appears to limit the matters cognizable by this Court. It provides that this Court

". . . shall have jurisdiction to determine and adjudicate the claims of the TRUSTEES that for the lease years ending April 30, 1969, April 30, 1970, and April 30, 1971, FISHER has not paid the full amount of the rent due under the lease dated January 12, 1965 . . . and FISHER'S claim that it has paid in additional rent for real estate taxes more than it was obligated to pay during the same lease years. This stipulation as to jurisdiction is limited to the precise claims so specified and does not extend to any other matter with respect to the said lease or any other dispute or controversy . . ."

The stipulation also provides that "the parties shall have all of the procedural rights to which they would otherwise be entitled in any plenary proceeding without a jury in any United States District Court"; that New York law governs; and that "in the event it should ultimately be determined in this proceeding that [tenant] is indebted to the [landlord] with respect to the claims included within this stipulation . . ." the tenant will not be deemed to be in default under the lease so long as it pays the amount so determined, with interest, within 90 days.

It can be argued, of course, that the stipulation was unnecessary in order to confer upon this Court jurisdiction already existing by reason of the earlier submission by the tenant; and therefore, the fact that the stipulation itself does not cover disputes for other lease years does not remove such disputes from the existing jurisdiction of this Court. But I believe this would be a tortured construction. It is apparent that the parties were willing to remove any doubts as to whether the tenant had submitted to the jurisdiction of the Bankruptcy Court by agreeing that certain issues were within the jurisdiction of the Court, and that other issues had not been so submitted.

I therefore conclude that this Court has jurisdiction to "determine and adjudicate" all claims relating to whether the tenant has underpaid or overpaid rent, for the lease years ending April 30, 1969, 1970, and 1971. This includes the "percentage rent" claims asserted in Count No. I, and a small portion of the "additional rent" claims asserted in Count No. III. It does not include the "percentage rent" claim asserted in Count No. II, and does not include a substantial part of the claim asserted in Count No. III.

I am also persuaded that the terms of the stipulation take precedence over the arbitration provisions of the lease. That is to say, by stipulating that this Court shall "determine and adjudicate" certain matters, the parties have

waived whatever right they may once have had to require that certain issues be submitted to arbitration.

With respect to the issues not submitted to this Court's jurisdiction under the terms of the stipulation, the parties are, of course, free to pursue whatever other remedies they may deem appropriate. Whether arbitration is necessarily one of those remedies, is not for this Court to say. Neither do I express any view as to whether the provisions of 28 U.S.C. § 1404 might have some application to any such other proceeding. It should be noted, of course, that whatever advantages or protections either side obtained under the terms of the stipulation, would not be available with respect to issues and claims not covered by the stipulation.

## II. *Motion for Summary Judgment*

■ The tenant's motion for summary judgment asserts that all claims for the lease years ending through 1971 (*i. e.*, the claims embraced in Count I of the Trustees' petition) are barred by the special limitations provisions of the lease. Paragraph 2(b) of that document provides, in essence, that the landlord has the right to demand an audit of the books and records supporting the tenant's calculation of the amount of rent due, at any time within five years after the close of a lease year; and further provides:

". . . If Landlord serves notice demanding an audit as aforesaid, Landlord shall be precluded from taking action with respect to the lease year under audit after one year has elapsed from the completion of that audit."

It is a permissible reading of this provision that it amounts to a contractual reduction of the period within which suit might be brought. Under New York law, such contractual reductions of the period of limitations are permissible, so long as they do not impose unreasonable restrictions. Sapinkopf v. Cunard Steamship Co., 254 N.Y. 111, 172 N.E. 259, cert. denied 282 U.S. 879, 51 S.Ct. 83, 75 L.Ed. 776 (1930); Planet Construction Corp. v. Board of Education, City of New York, 7 N.Y.2d 381, 198 N.Y.S.2d 68, 165 N.E.2d 758 (1960). *See* 1A Corbin on Contracts, ¶ 218 (1963). However, such changes in the limitations period are not looked upon with favor, and are strictly construed against the party invoking them. Hauer Construction Co. v. City of New York, 193 Misc. 747, 85 N.Y.S.2d 42, aff'd 276 App.Div. 841, 93 N.Y.S.2d 915 (1949).

■ From the record thus far developed, it appears that no audit was performed for the lease year ending April 30, 1970. And there are substantial factual disputes as to whether the audits for the years ending in 1969 and 1971 were ever completed. There are also substantial factual issues as to whether the tenant complied with its obligation, *see* Volk v. Cauldwell-Wingate Co., 272 App.Div. 290, 70 N.Y.S.2d 662 (1947), to provide financial information in a form adequate for verification and audit.

The Trustees also assert that the parties intended, by filing the June 1972 stipulation, to waive the limitations issue. The present record does not permit a conclusion that no factual issues remain for decision in that connection.

I am satisfied, therefore, that the motion for summary judgment must be denied.